WALTER M. JACKSON, complainant-respondent,

*v.*

HORACE E. HOOPER, HARRIS B. BURROWS, CHARLES C. WHINERY and FRANKLIN H. HOOPER, defendants-appellants.

[Argued November 30th, 1909.  Decided February 28th, 1910.]

1. Two individuals purchased all the stock of a business corporation under an agreement that they should be partners, having equal voice and equal control in the management and business of the company; that the corporation should be treated as a mere agency in carrying out the copartnership agreement; that the directors, other than the two parties, should be mere nominal directors; that corporate forms should be ignored and the business transacted and treated as a partnership business. This having been done for a time the parties disagreed.—*Held*, that a court of equity has no power to take the corporate property into its control, as upon the dissolution of a copartnership, but that the rights of the parties must be administered as shareholders in the corporation, not as partners.

2. An agreement between shareholders controlling the stock of the corporation, that certain directors shall act as nominal or dummy directors, subservient to the will of the parties, is illegal and cannot be enforced in a court of equity.

3. An injunction against the persons who compose the board of directors of a corporation enjoining them individually in respect to corporate affairs, is an injunction against the corporation.

4. A court of equity has no jurisdiction to regulate the management of the internal affairs of a corporation organized under foreign laws, through the medium of an injunction issued either against the members of the board of directors as individuals, who are parties to the action, or against the corporation directly.

On appeal from an order of the court of chancery advised by Vice-Chancellor Howell, whose opinion is reported *ante p. 185.*

*Mr. Sherman L. Whipple* (of the Massachusetts bar), *Mr. Richard V. Lindabury* and *Mr. Sherrerd Depue,* for the complainant-respondent.

*Mr. Henry W. Taft* (of the New York bar), *Mr. Robert H. McCarter, Mr. Jacob Newman* and *Mr. Benjamin V. Becker* (of the Illinois bar), and *Mr. Henry Wollman* (of the New York bar), for the defendants-appellants.

The opinion of the court was delivered by

DILL, J.

The bill and injunction in this case rest upon the theory that the complainant, who united with the defendant Horace E. Hooper in acquiring in equal shares all the stock of two foreign corporations, pursuant to an agreement claimed to create a partnership or joint adventure, is entitled to treat the two corporations, organized under foreign laws, as mere agencies or instrumentalities in the conduct of the joint business and to subject not only the stock owned by both parties, but all the corporate property to the control of the court of chancery according to the principles of the law of partnership.

The vice-chancellor held that "the complainant and the defendant Horace E. Hooper were engaged as principals in a joint undertaking;" that "the English and Illinois corporations were respectively agencies by which they accomplished their results," and that, as the rules governing partnerships applied, a preliminary injunction should be granted. From the injunction order the defendants appeal.

We are constrained to differ radically from the learned vice-chancellor in his views of the power and scope of the court of chancery, in dealing with corporate property, and we reach the conclusion that neither the bill nor the injunction can be sustained.

As we place our decision on broad grounds, which are disposi-

38

tive of the whole case, we treat the allegations of fact in the bill as favorably as upon a demurrer and without reference to the denials, contained in the answer and affidavits submitted by the defendants.

The record in this case is voluminous, covering over six hundred pages, but the salient facts are as follows:

Prior to 1900 the complainant and the defendant Horace E. Hooper had been associated in London, England, in the business of publishing and selling subscription books, "through the agency of a company known as 'The Clarke Company, Ltd.,'" an English corporation. In 1900 they acquired in equal portions all the stock of that company under an agreement that

"upon the acquisition of the Clarke interests and so long as they might be associated together in business, their general policy in respect of their joint undertakings should be determined by mutual assent, each to have and exercise the authority and control of equal partners."

In 1902, to avoid the English tax law, the business transacted in England was separated from that conducted elsewhere. The Clarke Company, Ltd., was dissolved, and its assets and all the business carried on by the parties in interest were conveyed to two corporations, one "Hooper & Jackson, Ltd.," of England, to carry on the business in the United Kingdom; the other, a New York corporation, "The Encyclopædia Brittanica Company," to operate elsewhere. The stock and securities of these corporations were issued to the two parties equally in payment for the property thus acquired by the corporations from these parties. The bill alleges that both these corporations were "intended to become merely instrumentalities or agencies for carrying out certain partnership purposes," and to be subject to the original agreement.

In 1903, for reasons of their own, the parties dissolved the New York corporation and transferred its assets to an Illinois corporation of the same name and under the same general understanding that the business should be carried on as a partnership, with five directors, of whom the complainant and Hooper were two, the other three being "nominal" directors.

As to the "nominal" directors the bill alleges in the plainest language that they were mere dummies, both in the New York company and its successor, the Illinois corporation, and says:

"It was clearly understood that the election of particular persons to these three positions was not intended to, and did not, confer upon them any authority or control or the management of the business of the plaintiff and Hooper, but that at all times such persons, employes or others, should have no right or authority whatever in corporate matters other than to vote as directed by Hooper and the plaintiff acting jointly."

From 1902 to 1908 the business in which the companies were engaged, including the publication of the Encyclopædia Brittannica, extended all over the civilized world and ran up into millions, the accounts receivable alone, at the time of the filing of the bill, amounting to over $2,000,000. During all this time, according to the bill, the business was conducted in the names of corporations but always in accordance with the original agreement as to equal ownership, interest, authority and control, the three nominal directors being mere employes and automatons of the parties, and the existence of the corporations being always disregarded "except as agencies and instrumentalities created by them for carrying out certain of their co-partnership purposes."

In 1908 the complainant and Hooper quarreled as to the business policy, and their differences having become irreconcilable the theretofore dummy directors voted with Hooper and against the complainant. This, as the bill puts it, constituted a breach of the so-called partnership agreement that Jackson and Hooper should have equal control and equal voice in the management of the companies and that the other three directors should be and remain dummies.

The charge of the bill is that Hooper and the three nominal directors passed corporate resolutions and amended by-laws which changed the complainant's alleged partnership control, contrary to his wish, or, in other words, that the three dummy directors, assisting Hooper, practically ousted the complainant from his alleged partnership control over the corporation. This was done by the passage of resolutions, as, for example, requiring checks to be signed by two officers, thus putting it out of the

complainant's control to draw on the assets of the company, as a partner would, whenever he saw fit and by his own check.

The relief asked for is that the court appoint a receiver of all the assets and joint property of the complainant and the defendant Horace E. Hooper, including their stock in the two corporations, such receiver to have the usual powers of receivers of assets of a copartnership; that the defendants—directors of the Illinois corporation—be restrained from selling any of the assets of the copartnership, including such stock, or from voting upon the same; from withdrawing from the business heretofore conducted by Hooper and the complainant or from any one of their bank accounts, in whatever name the same may be, any money otherwise than in the ordinary course of business; that defendants be restrained from preventing complainant from participating, as prior to 1908, in the conduct of the business carried on by the complainant and Hooper, whether the said business is carried on in the name of themselves or their companies; that the defendants be enjoined from causing any assets of the copartnership to be transferred to or by the Illinois corporation, irrespective of the name in which such assets stand, from selling either the English or American rights of the Encyclopædia Brittannica, eleventh edition, or disposing, except in the ordinary course of business, of any other assets of the copartnership, whether they stand in individual or corporate names; that the copartnership be dissolved, that an account be taken and that the assets of the copartnership be sold and distributed between the complainant and Horace E. Hooper.

After a careful review of the facts the vice-chancellor concluded that while the complainant had been unable to establish the existence of a copartnership between himself and Horace E. Hooper, he did prove that "the series of transactions set out in the bill * * * belonged to that class of transactions which are known by the name of joint adventures" and are subject to the same rules of law which apply to partnerships. He held that the complainant was entitled to a preliminary "injunction broad enough to hold the *status quo* and yet so limited as not to interfere with the orderly, regular and usual conduct of the business."

He granted an injunction which, although reciting that 'nothing therein should "interfere or be deemed to interfere with the integrity or autonomy of the two corporations mentioned in the bill of complaint, to wit, Hooper and Jackson, Ltd., an English corporation, and the Encyclopædia Brittannicà Company, an Illinois corporation, or either of them, or to interfere with the business or property of either of said corporations, *except as herein specifically stated,"* forthwith proceeds to enjoin the defendants, who, with the complainant, constitute the entire boards of directors of the English and Illinois corporations, from transferring any of the shares of stock therein, from withdrawing from the business of the complainant and Hooper or "from any one of the bank accounts of the said business, in whatever name the same may be, any money or moneys for the private or personal use of the defendants  *  *  *  or otherwise than in the payment in the ordinary course of business," except that such defendants as are employes may receive their respective salaries. He further issued a mandatory injunction that the complainant and the defendant Horace E. Hooper may withdraw such sums for their private use as they may mutually agree upon, or, in absence of an agreement between them, that each may draw $5,000 per month; that either complainant or said Hooper shall have the right to sign checks for such amount, except that any debt of the business may be paid out of the funds thereof in whatever name standing. The order further enjoins the defendants from interfering with the complainant in his entrance and exit to and from any office where the business is carried on or in his examination of its books and accounts, and proceeds to enjoin the defendants from transferring or causing to be transferred any of the assets of the English corporation to the Illinois corporation, or *vice versa,* except in the regular course of business, and from "selling or causing to be sold" the rights of the Encyclopædia Brittannica Company in the eleventh edition, or "any assets of the said business carried on by the complainant and the defendant Horace E. Hooper, in whosesoever name the same may stand."

In our view of the case the fundamental question is not whether the complainant has established the agreement alleged, but

whether, assuming that he has, the court has the power to enforce it.

The first question to be discussed is whether, assuming the fact of the partnership or joint adventure as alleged to be satisfactorily proven, the complainant and the defendant, after the organization of the foreign corporations, were, as matter of law, partners or merely shareholders.

It is conceded that the corporations in question were legally organized, existing and doing business under foreign laws. It is not disputed that when the corporations were formed and the stock and bond interests acquired the parties retained no legal title to the property or business transferred. It is not questioned that the forms of law were complied with by the election of directors and officers and the prosecution of the corporate business. Indeed, the record abounds with evidence establishing the fact that the corporations as such, through their officers and agents, made contracts and in general transacted the business for which they were organized. Thus, from 1904 to 1909, promissory notes for over a million dollars were executed by and in the name of the Illinois corporation.

It is true that directors' and stockholders' meetings were seldom held and that the financial and other business affairs of the corporation were often informally and loosely conducted, yet, on the whole, the operations of the companies were the same as those of innumerable other so-called "close corporations" in which all the stock is held by a few persons who are as one in the conduct and policy of corporate action.

It is claimed, however, that these owners of all the stock were really copartners, doing business in corporate form for their own convenience, and that a court of equity has the power to control the property and affairs of the companies even to the extent of eliminating the corporate functions and powers as mere incidents and wholly disregarding the substantive law governing the creation, supervision and dissolution of corporations. We cannot subscribe to any such doctrine.

An agreement or course of dealing by which corporations are organized for the purpose of using them merely as agencies or instrumentalities, or forms in the conduct of a copartnership

or joint business, and by the consent of the parties in interest to be independent of statutory control, cannot be recognized, enforced or perpetuated by the court of chancery in this state.

It is fundamental that, no matter how the shares of stock are held, the corporation itself is an entity wholly separate and distinct from the individuals who compose and control it.

The complainant and the defendant, though owning the entire capital stock of the two corporations, are not, as expressed by Chief-Justice Waite in the leading case of *Pullman Palace Car Co.* v. *Missouri Pacific Railway Co., 115 U. S. 587,* "the corporation, in the sense of that term as applied to the management of the corporate business or the control of the corporate property."

The law never contemplated that persons engaged in business as partners may incorporate, with intent to obtain the advantages and immunities of a corporate form and then, Proteus-like, become at will a copartnership or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require.

The policy of the law is to the contrary. If the parties have the rights of partners they have the duties and liabilities imposed by law and are responsible *in solido* to all creditors.

If they adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world.

Furthermore, upon grounds of public policy, the doctrine contended for cannot be tolerated as it renders nugatory and void the authority of the legislature—a co-ordinate branch of the government—established by the constitution in respect to the creation, supervision and winding up of corporations.

These views are amply sustained by abundant authority.

"A corporation is a legal person just as much as an individual," said the court in *Sheffield, &c., Building Society, 22 Q. B. D. 476.* And in *Society* v. *Abbott, 2 Beav. 567,* Lord Langdale, master of rolls, held that, as in this case, great confusion arises by failure to distinguish the body corporate from the indi-

viduals who constitute, "not the corporation, but all the members of the corporation."

The doctrine repeatedly urged by the complainant and adopted by the vice-chancellor, viz., that "the English and Illinois corporations were, respectively, agencies by which they (Jackson and Hooper) accomplished their results," was expressly repudiated by the house of lords in *Salomon* v. *Salomon, Limited, 45 Week. Rep. 193; L. R. App. Cas. (1897) 22,* where Lord Halsbury met this argument, saying:

"I will, for the sake of argument, assume the proposition that the court of appeal lays down, that the formation of the company was a mere scheme to enable Salomon to carry on business in the name of the company. * * * Either the limited company was a legal entity or it was not. If it was, the business belonged to it and not to Salomon. If it was not, there was no person and no thing to be an agent at all, and it is impossible to say at the same time that there is and there is not a company."

And Lord Macnaghten thus concurred:

"The company is at law a different person altogether from the subscribers to the memorandum, and, though it may be that after incorporation the business is precisely the same as it was before, and the same persons are managers, and the same hands receive the profits, the company is not in·law the agent of the subscribers or trustee for them."

Two years earlier Lord-Justice Lindley asserted the same rule in the case of *Newman & Co. (1895), 1 Ch. 674, 685:*

"It is true that this company was a small one, and is what is called a private company, but its corporate capacity cannot be ignored. Those who form such companies obtain great advantages, but accompanied by some disadvantages. * * * An incorporated company's assets are its property and not the property of the shareholders·for the time being. * * * The court is bound to recognize the company as incorporated, and to give effect to all the consequences of such incorporation."

The same theory and the same argument urged upon this court by the complainant's counsel were presented to the court of last resort of Massachusetts more than seventy-five years ago, and in a case strikingly similar to and on all fours with the case

at bar. That court characterized the argument as ingenious but declared the theory fallacious and the conclusions unsound. *Russell* v. *M'Lellan, 14 Pick. 63.*

The Massachusetts court said of the bill in that case:

"This was a bill in equity, setting forth that the plaintiff and the defendant were owners of a manufactory in Framingham from 1823 to the time of filing the bill; that in 1826 they organized themselves, under an act of incorporation passed in 1813, by the name of the Framingham Manufacturing Company, and that the business, both before and after such organization, was carried on by them jointly as partners, and praying for an account and for general relief."

The plaintiff and the defendant purchased in equal portions the entire stock of a manufacturing company pursuant to a written agreement that they should thereby become partners in the business thus carried on.

"During the period from 1823 to 1826 the business of manufacturing was carried on in the factory under the direction of the parties, sundry goods were manufactured and sold, sundry parcels of stock were purchased, and moneys were advanced and received by the parties, respectively, and some accounts were rendered by one to the other purporting to set forth some of their dealings. No regular corporate meetings were held during that period, but such formal proceedings as were had appear from two books produced by the defendant as the records of the corporation."

The issue was as to whether the plaintiff and the defendant were partners or shareholders. The court, after discussing the difference in law between a shareholder and a partner, said:

"It was argued that the proposal of the defendant to the plaintiff to become jointly interested in this concern, each taking eight shares, made them partners or joint tenants or tenants in common, *ipso facto,* upon its adoption. But we cannot perceive that inference, for the corporation continued. The parties did not, by the new arrangement, acquire a legal title to the corporate property. They had, indeed, joint and equal control over it, but their acts and doings must appear through the proceedings of the corporation in the due forms of the law.

"It is said that the parties held for two years without doing any corporate act. If it were so, we cannot perceive that they would become partners instead of corporators.

"Upon the whole, we are of opinion that these parties are not partners, tenants in common or joint tenants, and that the bill must be dismissed."

The court cited *Pratt* v. *Bacon, 10 Pick. 123,* likewise a decision of the court of last resort and to the same effect. The *Pratt Case* has been cited with approval in *Von Arnim* v. *American Tube Works, 188 Mass. 515,* and the *Russell Case* in *Welch* v. *Bank, 122 N. Y. 189.*

In this state, *Einstein* v. *Rosenfeld, 38 N. J. Eq. (11 Stew.) 309,* announces the same rule. The facts were similar to those in the case at bar, excepting that the corporation was a domestic one.

Chancellor Runyon said:

"It is urged, however, that in this case the corporation was but a mere form which the partners gave to what was, in fact, only a copartnership, and that this court is therefore at liberty to treat and deal with it as a copartnership. The bill alleges that the corporation is a *quasi* partnership. It appears by the answer that a partnership was at first agreed upon between the parties, but it was afterwards agreed between them to form a corporation instead. It is entirely clear that the court, in dealing with the subject, must treat the company as a corporation, and it cannot, in order to acquire jurisdiction over it to dissolve it, disregard and ignore its form and character."

This decision was quoted with approval by this court in *Sternberg* v. *Wolff, 56 N. J. Eq. (11 Dick.) 389,* which appeared again in chancery, *56 N. J. Eq. (11 Dick.) 555.* Two sets of stockholders were contending for control. Complainant owned one-half of the stock and defendant the other half. Suit was filed to restrain the defendant from acting as treasurer and for a receiver.

In denying an order for an injunction and receiver, Vice-Chancellor Pitney held that the remedies available as between partners and "joint adventurers" cannot be applied to stockholders of corporations.

The basic proposition upon which the bill and the injunction rest, viz., the partnership and agency theories, having thus been disposed of adversely to the complainant, the contention that a court of equity, acting *in personam,* may bind the conscience of a party even to the extent of sequestrating property in a foreign state, falls with it.

The remaining questions, two in number, are controlled by well-settled and familiar rules of corporation law.

The next question is whether the alleged agreement relied upon by the complainant, that the directors of the Illinois corporation, other than Jackson and Hooper, should be mere nominal directors without independent judgment and subject to their joint dictation and control, is enforceable. The complainant's position is that this agreement has been violated and he asks the court to enforce it.

Our Corporation law (section 12) provides that "The business of every corporation shall be managed by its directors." The law of Illinois is to the same effect.

The law thus confides the business management of the corporation to its directors. The directors must act in behalf of the corporation. They represent all of the stockholders and creditors and cannot enter into agreements, either among themselves or with stockholders, by which they abdicate their independent judgment.

Mr. Justice Garrison, in a recent decision of this court, expresses the same thought when he says:

"A contract by which the directors of such corporation in conclusive form abdicate their duty of management in this respect, and turn it over to an alien body, is in direct violation of the words and meaning of the statute, and is as typical an instance of an *ultra vires* act as can well be imagined. To do so in a given instance would be an illegal act." *McCarter* v. *Firemen's Insurance Co., 74 N. J. Eq. (4 Buch.) 372.*

The United States court, in *West* v. *Camden, 135 U. S. 507,* lays down the same rule.

A director who does not direct is liable for his neglect of duty. *Kavanaugh* v. *Commonwealth Trust Co. of New York (New York Supreme Court), 64 Misc. 303.*

The very contract upon which the complainant relies, so far as it provides for the creation, election and maintenance of dummy directors, is contrary to every principle of the laws of this state. *See* v. *Heppenheimer, 69 N. J. Eq. (3 Robb.) 36* (at p. 75).

For a discussion of the nullity of the acts of dummy directors by Leonard M. Wallstein, of the New York bar, see *15 Yale L. Jour. No. 3, January, 1906.*

Finally, the court of chancery had no jurisdiction to issue the injunction in question. The court assumed to exercise visitorial powers over two foreign corporations which are not parties to this suit and to regulate the management of their internal affairs.

The phrase "internal affairs of a corporation," as here used, is well defined in the case of *North State, &c., Mining Co.* v. *Field, 64 Md. 151,* as follows:

"Where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors, then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation our courts will not take jurisdiction."

The courts of this state do not possess such jurisdiction, and any suggestion of its assumption we emphatically repudiate.

An injunction which enjoins the directors of a corporation as individuals, but with respect to corporate affairs, is an injunction against the corporation.

We are quite satisfied again to approve of the language of Vice-Chancellor, now Mr. Justice Reed, when, in the case of *Stockton, Attorney-General,* v. *American Tobacco Co., 55 N. J. Eq. (10 Dick.) 352,* he said:

"Nor, in my judgment, is this result evaded by enjoining the officers individually instead of restraining the corporation. It is perfectly obvious that what has been done since the organization, and what is intended to be done in the future, are corporate and not individual acts. The power of the corporation

to select its officers and agents in the manner prescribed by the Corporation act or permitted by law is plenary. Now, it seems a paradox to say that a corporation can do, through its agents, what the agents cannot do. Inasmuch as corporate existence can only be manifested through its officers, and corporate privileges can only be utilized by means of agents, it is impossible to detach the corporation from those who represent it and deny to the latter what is conceded to the former. An injunction which ties the hands of the officers and agents of a corporation from transacting any corporate business is the exact equivalent of an injunction which prevents the corporation from transacting any business, which, as already remarked, is the equivalent of a judgment on *quo warranto.*"

It is unnecessary to analyze again the terms of the injunction in referring to its extraordinary scope and effect.

In a form, sweeping, mandatory and embodying the ingenious theory of the complainant, the injunction, while purporting not to disturb or interfere with the integrity and autonomy of the foreign corporations, but only to enjoin the individuals from transferring property of an extensive business having its *situs* in foreign states, does, in fact, substance and effect, regulate and control the internal affairs of corporations chartered by foreign sovereignties and prevents freedom of action on the part of corporations not made parties to the suit, which we have held to be distinct legal entities and controlled by foreign laws. In violation of every obligation of official duty and responsibility imposed by law upon officers and directors, it substitutes the will of the chancellor for deliberate corporate action.

Such assumption of power cannot be approved or tolerated without a complete destruction of equitable doctrine as applied to corporations, and a subversion of the law affecting corporate rights, duties and relations.

As Chancellor Runyon said in *Gregory* v. *New York, &c., Railway Co., 40 N. J. Eq. (13 Stew.) 38:*

"It is almost too obvious for remark that this court cannot regulate the internal affairs of foreign corporations, nor can it enforce its decree out of this state."

State comity is opposed to the assumption of such jurisdiction and to the usurpation by one state of the power of another over its own institutions.

The decision of the foregoing questions renders it unnecessary to discuss the other subordinate propositions raised by the briefs.

We hold that the parties are not partners as to the corporate property, but merely stockholders in two foreign corporations, distinct legal entities; that the agreement whereby these dummy directors were bound to act in accordance with the will of the complainant and Hooper was illegal and therefore unenforceable in any court; that the whole subject-matter of the controversy relates to, and the injunction attempts to regulate, the management of the internal affairs of two foreign corporations; that the court of chancery has no jurisdiction to entertain the bill and that the injunction and all proceedings thereunder should be vacated and held for naught.

For the reasons already given the order appealed from is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VROOM, GRAY, DILL, CONGDON—14.