The defendant is a Delaware corporation. The complainants, stockholders and creditors, filed this bill (amended) to enjoin it from exercising its corporate franchise in this state, for a receiver.
The company was formed in May, 1925, by Christopher H. Berry, an inventor, and John C. Hoshor, a New York stock broker, using dummy shareholders, with an authorized capital stock of $1,000,000, divided into one million shares at a dollar a share. Berry had invented a grease cup, and had a patent pending, and for a license to manufacture the cup all the authorized capital stock of the company was issued to him — that is, the license to manufacture the cup was capitalized for a million dollars. Seven hundred and fifty thousand of the shares were immediately handed over to Hoshor and fifty thousand shares were returned to the treasury of the company for sale to the public. The corporation then entered into a contract with Hoshor's stock brokerage concern, Hoshor, Montayne Company, later changed to Hoshor, Presby Company, to sell the company's fifty thousand shares of treasury stock, the company to pay all expenses and ten per cent. commission. The stock floating campaign was then launched. The public was circularized with the usual alluring literature, guardedly phrased, but false in spirit and fact, in which the Berry Automatic Lubricator Company was represented as an active manufacturer and distributor of lubricators; that its customers were some of the largest manufacturers in the nation, and that there were reasonable prospects of a twenty per cent. dividend in 1926, all designed to intrigue their victims into the belief that the company was in prosperous and successful operation. Crafty salesmen were sent into the field, and with glib tongue and false heart, and *Page 59 
by wicked and false pretenses, swindled them of their money and securities — securities paying a lower dividend. The promise of a twenty per cent. dividend was the bait dangled at the end of their line of misrepresentations. After two thousand three hundred and eighty-three shares had been disposed of at a dollar and a half a share, the promoters, evidently feeling that they were selling them too cheap, and that $5 and over could be as readily gotten, recapitalized the license at $5,000,000, increased the authorized capital stock to that amount, and the shares to $5 each, and, thereafter, one hundred shares were sold at $4 a share, twenty-four thousand four hundred and sixty-seven at $5 per share, one hundred and thirty-one at $7 per share and one thousand five hundred and seventy-nine at $7.50 per share, yielding a total of $139,015.50. Of this sum, $76,100.50 represents stock and securities taken in exchange and resold for $54,481.23, leaving a net yield of $117,396.23 in cash. Of this, over $96,000 — to be exact $96,293.69 — has been eaten up by expenses, salaries, commissions, c. A shop had been rented in Newark and second-hand machinery had been installed at a cost of $11,000 on deferred payments, but not a wheel was turned nor a cup marketed for profit. Half a dozen or more mechanics made cups by hand, a few a day, in all a few hundred, which were sold or sent to large manufacturers as try-outs or samples. These were the much-advertised customers. It was sought to show that lack of co-operation between the stock brokerage and factory management was accountable for the failure of machine production on a larger scale, but the facts tend to show that the factory was a mere sham and pretense, and that the grease cups functioned mainly in lubricating the sale of stock. It is not questioned that the invention has merit, but fixing its value and price at a million dollars of the capital stock of the company implies fraud at the outset, and later raising the face value of the issue to $5,000,000 demonstrates it, as well as the cupidity of the promoters. There is nothing left to show for the $117,396.23 except some second-hand machinery, as yet unpaid for, office furniture and stock on hand, all appraised *Page 60 
at $14,000; $7,678 due from Hoshor, Presby Company, which, apparently, is uncollectible, a few dollars in bank. From this showing, and the figures are taken from the account furnished by Hoshor, Presby Company, can it be doubted that the corporation was manipulated solely as a stock-selling swindle, and that the scheme is only one of many by which the public is fleeced of a billion dollars annually, as statistics show?
It may be as contended, that all the related misuses and abuses of the corporation and of the public are foreign to the jurisdiction of this court in these proceedings, but it cannot be plausibly argued that they are not influential in solving the issue of insolvency presented by the bill. Foreign corporations licensed to do business in this state are subject to the provisions of our Corporation act only so far as they are applicable. For the regulation of their internal affairs the courts of the state of their creation must be resorted to. But when such companies are engaged in business in this state and have their property here, an injunction may issue and a receiver be appointed, as in cases of domestic corporations, upon insolvency, actual or potential, and it is on this single ground and issue that the bill is entertained. The company never functioned in legitimate business. Its liquid assets have been dissipated. The company's factory is a liability. It has no business. It has orders, so it is claimed, for three hundred and eighty-five cups from seventy-nine concerns, ranging in price from ninety cents to $6 per cup, a total of $916.20, mostly samples, and no funds to pay for labor or material. It must buy for cash, and it has none. Its total debt is not large, only $2,724.14, but it cannot pay. It has asked its creditors for an extension of time; with what result is not disclosed. Numerous checks, given in payment of bills, have, time and again, been dishonored, and some are still under protest and unpaid. These are Hosher, Presby Company's checks given in settlement of merchandise and wage accounts. They were the company's fiscal agents. It is said that the company has $874 in bank and $447.53 bills receivable. If that be so why are not the protested checks *Page 61 
paid? It is urged in the affidavits and argument that $5,000 would set this five-million-dollar company on its feet, and that to enjoin it and to appoint a receiver would be unjust and disastrous to the stockholders. Hoshor, Presby Company owe the company $7,678, remnant of the stock sales. Why that is not used to "salvage" the concern is obvious. The appeal for leave to further exploit the public spells its own answer of bankruptcy. The company is hopelessly insolvent, and, in the language of our statute, "is not able to resume its business in a short time * * * with safety to the public and advantage to the stockholders."
A receiver will be appointed.