Complainant, on his amended bill and affidavit, seeks the appointment of a custodial receiver for defendant, on the ground of corporate mismanagement, or an injunction against defendant's further exercise of corporate franchises and the *Page 523 
appointment of a receiver under the statutory provisions as to insolvent corporations.
Complainant is a resident of New Jersey, and the owner and holder of two hundred shares of common stock of the defendant company — although the shares have not yet been transferred to him on the defendant's books. Defendant is a New York corporation, licensed to do business in this state. It is a large and well-known corporation, doing a national or international business — and has some of its assets in New Jersey, to wit — two plants for the development and printing of moving picture films.
Defendant was given an opportunity to appear and be heard on complainant's application for the usual order to show cause.
The bill seeks, inter alia, the appointment of a custodial receiver, and makes certain allegations of mismanagement or wrongful acts by the directors or those in control of defendant — allegations of wrongful issue of stock, of failure to exercise a valuable option, of illegal advancements to subsidiary companies, of dissensions in the internal affairs of defendant, and the like. These allegations might be considered if defendant were a New Jersey corporation — but it is not. A custodial receiver is only appointed as incidental to and in aid of some specific relief. This court cannot give complainant any relief — assuming him to be entitled thereto — by any decree attempting to regulate the internal affairs of a foreign corporation; and will not attempt so to do. Jackson v. Hooper, 76 N.J. Eq. 592.
The bill can be considered therefore only as one framed on the theory of establishing a condition of actual or inevitable insolvency, under the statute, and asking a decree to that effect, and enjoining the exercise of defendant's corporate franchises, and the appointment of a receiver to liquidate its affairs.
The bill makes the general charge that the defendant "is insolvent in this the meaning of the statute," but the facts alleged in the bill and affidavits assuredly present no condition *Page 524 
of actual insolvency; and in this indeed, complainant at least tacitly acquiesced, at the hearing.
But it is contended that a sufficient showing is made to comply with the requirements of the sixty-fifth section of the Corporation act, as amended in 1912 (P.L. 1912 p. 535), which provides that if the business of a corporation "has been or is being conducted at a great loss and greatly prejudicial to the interest of its creditors or stockholders, so that its business cannot be conducted with safety to the public and advantage to the stockholders," this court may enjoin the exercise of the corporate franchises, c.
Defendant contends that this court cannot, or at least should not, attempt to make any such decree in the case of a foreign corporation; and says that such decree has never been made in this state as to a foreign corporation, except where actual insolvency has been established.
This court has the power to make such a decree in the case of a foreign corporation actually insolvent, if it is doing business in this state and has assets here — although the restraint which may be decreed cannot be as extensive as in the case of a domestic corporation. Baldwin v. Berry Automatic LubricatorCo. (Court of Chancery), 99 N.J. Eq. 57; S.C. (Court ofErrors and Appeals), 100 N.J. Eq. 362.
And if this court has jurisdiction to make such a decree in the case of actual insolvency, it would certainly seem that it has equal jurisdiction to make such decree in the case of the alternative situation mentioned in the statute, to wit, inevitable and imminent future insolvency. That is undoubtedly what Vice-Chancellor Backes meant, in the Baldwin Case, supra, where he says that injunction may issue against a foreign corporation, upon insolvency actual or "potential;" and no disapproval as to this is voiced in the opinion on appeal. It is not perceived that any distinction can logically be drawn. The same reasons which justify a decree where actual insolvency exists, must needs also justify it where it appears that insolvency must inevitably shortly ensue. *Page 525 
A careful consideration of the allegations of the bill and affidavits, however, leads to the conclusion that a situation meeting the requirements of the statute in this behalf, is not shown. There are certainly allegations of fact sufficient to warrant the finding that the business of the company has been
conducted at great loss — but the statute also requires that it be shown that the business is being conducted at great loss and greatly prejudicial to the interests of its creditors or stockholders and that its business cannot be conducted with safety to the public and advantage to the stockholders. This does not appear in the instant case.
It does appear by the allegations of the bill and affidavits that the defendant suffered a loss of nearly $2,000,000 in 1927, and the same in 1928; that in 1929 it suffered a loss of nearly $500,000; and in the first quarter of 1930 a loss of $66,431 (which would be at the rate of about $250,000 for the year). It thus appears that, even on complainant's allegations, the defendant's losses are being rapidly reduced — hence its condition is bettering; which is very far from showing that defendant's business cannot be conducted with safety to the public and advantage to the stockholders — very far from showing that insolvency is inevitable either in the near future or at any time.
There are additional charges and general allegations in the bill and affidavits, and additional facts appearing at the hearing to which, however, it is unnecessary to refer in detail. It is concluded, upon the whole showing made, that complainant is not entitled to the usual order to show cause, nor to the appointment of a master under P.L. 1919 p. 453. *Page 526