The complainant, trustee, seeks the aid of the court in the discharge of its duties under the last will and testament of Chester A. Braman, deceased.
The testator died November 29th, 1928. After legacies of nearly two million dollars, he gave the rest of his estate to the complainant in trust to divide it into equal shares, a share for his widow and one for each of his four children surviving, to pay each the net income of the share for life, remainder over to their appointees by will, and in default of appointment to their next of kin. *Page 192 
The residuary estate consists, in part, of ten thousand shares of the Alwyn Corporation, all the capital stock of that company. The two individual executors of the will, with another, as directors, took over the management of the company. The company's business was the buying and selling of securities. The corporation declared a dividend of twenty per cent. out of earnings during the eleven months next following the testator's death; one-half represented income from securities it owned, the other half came from profits on the sales of securities. The profits came mostly from the sales of securities, purchased by the company in the testator's lifetime, but during the eleven months there were purchases upon the sales of which substantial profits were realized. All securities were carried on the company's books at cost. The gross profit for the period on sales, over costs, was $248,184.46. The gross profit over the market value of the securities at the testator's death was $106,254.18; hardly enough out of which to declare the $100,000 dividend, for there were apportionable operating expenses of over $30,000. But that is only of subordinate interest.
The trustee allocated the entire dividend to income. The guardian ad litem for the infants, contingent remaindermen, grandchildren of the testator, objects, contending that so much of one-half of the dividend which represent profits from the company's business after the testator's death, derived from the sale of securities owned by it at the time of his death, should be allotted to corpus, his argument being that, inasmuch as the testator owned all the capital stock of the Alwyn Corporation, the company's tangible assets at his death should, in order to effectuate the testator's intention in respect of income andcorpus of the residuary estate, be treated as assets of the estate, and the profit thereon, part of the profits from the operation of the company by the executors, should be regarded as profit on the sales of assets of the estate; in fine, that the corporate entity should be disregarded.
While we feel that it was the guardian's duty, in safeguarding his wards, to present the question for judicial determination, we do not agree with his conception of the testator's intention. *Page 193 
It may well be that had the testator given the assets of the corporation in trust for the beneficiaries of his residuary estate, we might look through the corporate form to carry out the intention, and to reach the conclusion which he urges, that the profits of the post mortem operations of the company were mere increments of the gift of the corpus. It was in such situations that the courts, in the cases he cites, disregarded corporate entity to fulfill testamentary intention. Matter of Bush,209 N Y Supp. 776; Matter of Winburn, N.Y.L.J., April 5th, 1930; inFarmers Loan and Trust Co. v. Pierson, 222 N.Y. Supp. 532, trustees, upon an accounting, were held to a discovery of their directorial management of a corporation solely owned by their testator; corporate entity as a shield against trust responsibility was brushed aside. But in the instant case the testator intended that his ten thousand shares, viz.: the company, its privileges and franchises, and its good will, all of which he must have thought to be of great value, should be of the residue of his estate. A clear manifestation is to be found in the wish, later expressed in the will, that the stock be held unless the executors or the trustees deemed it for the best interest of estate to sell it, or any part, or that the corporation be liquidated, and it is as emphatically implied in the power given to them to use the stock to set up the five trusts eventually to be paid over to the remaindermen. If the life tenants of the trust were severally to have the corporate dividends after the stock was set apart for them, in reason, the division of profits made by the company before segregation belongs to them; and that it was so intended by the testator we think admits of no doubt. We must be guided entirely by the testament, and, if the testator unequivocally expresses his intentions, that is the law of his will. It is not permissible to look into surrounding circumstances to draw an adverse inference or superimpose a different meaning. It is of no interest to us that the testator formed the Alwyn Corporation in 1923 for business conveniences, that in exchange for $4,502,872.79 worth of his property he got all the shares (ten thousand) of the corporation, ran it as a one-man affair, dealt with its *Page 194 
assets as his own and made a lot more money. If all this be true we are not in sympathy with the guardian's insistence that it is an allowable deduction of fact that, in death as in life, he regarded the tangible property of the company as his possessions. The testator was a director in three corporations, was familiar with corporate organization and management, and his will furnishes abundant proof of his discrimination and his appreciation that his residuary estate was made up of the capital stock of the Alwyn Corporation and not of its tangible assets. We agree with the guardian that if our view of the testator's intention were in harmony with his, the result he is striving for could be reached without disregarding the corporate entity, and we are in agreement with the opposition that the corporate entity cannot be pierced to arrive at that result. Jackson v. Hooper,76 N.J. Eq. 592.
Life tenants are entitled to dividends declared by a corporation from the profit of its business. That is the settled law of our courts from Lang v. Lang's Ex'r, 57 N.J. Eq. 325,
down to Union County Trust Co. v. Gray, 110 N.J. Eq. 270;Ballantine v. Young, 79 N.J. Eq. 70; Day v. Faulks, 79 N.J. Eq. 66; 81 N.J. Eq. 173; McCracken v. Gulick, 92 N.J. Eq. 214;Beattie v. Gedney, 99 N.J. Eq. 207; Hagedorn v. Arens,106 N.J. Eq. 377. The Alwyn Corporation dealt in securities. Securities were its stock in trade its capital assets, as shoes or hats are the commodities of commercial companies. Dividends declared out of profit made in dealing in them after the testator's death belong to the life tenants. Krug v.Merchantile Trust and Deposit Company of Maryland, 133 Md. 110;104 Atl. Rep. 414; Washington County Hospital Assn. v.Hagerstown Trust Co., 124 Md. 1; 91 Atl. Rep. 787. The worth of the corpus of the testator's estate in so far as it was made up of the shares in the corporation was the value of the securities at the death of the testator, less the corporate debts. InBallantine v. Young, supra, the value was, for convenience, based on the book value. Here it was calculated at the market value; an enhanced value. The corporation took over the securities, continued the business as the testator contemplated and made a *Page 195 
profit, and out of that profit it declared the dividend in controversy. That some of the profit was made out of the sale of securities owned at the testator's death cannot possibly affect the right to the dividend. Suppose the company, on the day of the testators' death, had sold all the securities at the market value and with the proceeds had purchased other securities, as it had the right to do, could there be any doubt that the profit, divided, was income payable to the life tenants?
There is to be no apportionment between corpus and income except in the minor item above noted. The trustee is advised to allocate the dividend to income, modified as indicated.
Decree accordingly.