William F. Meredith, Joseph D. Meredith and City Bank Farmers Trust Company, as trustees of the special trust created in and by the sixth paragraph of the last will and testament of William T. Meredith, deceased, in presenting their second intermediate account pray instructions (1) as to their duties with respect to 400 shares of capital stock of W.T. Meredith Estate, Inc., now held in said trust and (2) with respect to their duty in regard to the payment of taxes heretofore and hereafter assessed upon real estate owned by said corporation located in Staten Island, New York.
William H. Osborne, Jr., as guardian ad litem for various infants, all of whom are grandchildren of two of the present *Page 198 
life tenants of said trust and as such may be, at some time in the future, life tenants or remaindermen or both, excepts:
(a) To the allowances prayed by the trustees for income distributed to the life beneficiaries by loaning and advancing funds at the life tenant's direction to W.T. Meredith Estate, Inc., for the payment of its taxes on the Staten Island real estate and the failure of the trustees to include as assets of the trust notes given by the corporation to the life tenants evidencing said loans.
(b) To the allowances prayed by the trustees for income distributed to the life tenants in May, 1941, because taxes on the Staten Island real estate owned by W.T. Meredith Estate, Inc., were unpaid at the time of such distribution.
It is the guardian's contention that it is the duty of the trustees to pay the taxes on the corporation's property from the income of the trust.
William T. Meredith died on March 5th, 1920, leaving a will and nine codicils. At the time of his death he owned the entire capital stock (400 shares) of W.T. Meredith Estate, a New York corporation, which stock had a par value of $25 per share or a total par value of $10,000 and an inventory value of $20,244. The assets of the corporation consisted of a large tract of land located in Chelsea, Staten Island, New York, most of which was unimproved. The land now remaining undisposed of is all unimproved.
The testator acquired this property in 1884 for approximately $3,000, and organized the corporation under the laws of the State of New York on February 14th, 1908, with broad powers to hold, buy, sell and operate real estate and other investments. The corporation accepted Mr. Meredith's offer to sell to it the Staten Island real estate for the entire capital stock of the corporation. The testator held the stock at the time of his death. In the interim he had advanced to the corporation from time to time an aggregate amount of $48,453.02 for taxes and carrying charges which amount was inventoried as a part of his estate and is still carried as an asset in the four residuary trusts known as the "Consolidated Trusts." On March 22d 1923, the form of the indebtedness *Page 199 
of the corporation to the estate was changed to a promissory note for the same amount. Each of the four consolidated trusts now holds a note for one-quarter of this amount.
The testator in the sixth article of his will made a specific bequest of "all the capital stock which I may own, at the time of my death, in The Titanium Alloy Manufacturing Company and in the W.T. Meredith Estate, corporations duly organized and existing under and by virtue of the laws of the State of Maine and the State of New York, respectively," together with real property in Perth Amboy, New Jersey (which was later withdrawn by a codicil), in trust during the lives of his four children, William F. Meredith, Mary Meredith Dana, Joseph D. Meredith and Gertrude Meredith Nichols and of such husbands, wives and issue of said four children as shall be living at the time of his death, "the net interest, rents and income thereof" to be paid to his said four children during their respective lives in equal portions and upon the death of each of said children his or her portion thereof was to be paid to his or her spouse and issue, perstirpes. Upon the death of the last survivor of the above mentioned persons living at his death, the principal was directed to be distributed "in equal shares to the issue then living of my said four children, taking per stirpes and not per capita, to have and to hold the same absolutely."
Pursuant to decree of this court November 12th, 1930, this trust as set up consisted of 1,550 shares of the common stock of the Titanium Alloy Manufacturing Company which had an inventory value of $19,933 and the 400 shares of W.T. Meredith Estate, Inc., at their inventory value of $20,244.
The common stock of Titanium Alloy Manufacturing Company was highly speculative and of little value. It paid no dividends and it was not until April 5th, 1927, more than seven years after the testator's death, that the first dividend was paid. This stock is now quite valuable and is producing large dividends. It is this fact that prompted the exceptions of the guardian ad litem.
At decedent's death the Staten Island property was not producing any net income and the testator apparently contemplated *Page 200 
that it would not do so. In the executors' first account it appears that from the testator's death to the end of the following year the executors advanced to the corporation $3,037.60 for real estate taxes, franchise taxes and miscellaneous expenses.
The trustees hold the stock of W.T. Meredith Estate, Inc. The corporation and the executors and trustees have made every effort to sell same over a period of more than twenty-three years, during all of which time the corporation has paid over $100,000 in taxes. The property is unproductive and highly speculative in value. Unless the trustees are required to apply income the only way the funds can be provided for the payment of taxes is by liquidation of all or part of the stock of the Titanium Alloy Manufacturing Company held in the trust under the sixth paragraph of the will (which everyone but the guardian opposes and which is inadvisable because of its inherent value as well as its income producing power), the sale of mortgage investments, which could only be made at a sacrifice, or the sale of the Federal Farm Mortgage Corporation debentures, now held in the trust under the eighth paragraph, which would produce about $12,500. If these debentures were sold the proceeds would barely pay the taxes now in arrears and the problem as to the future would be the same.
At the present time there are taxes due amounting to something more than $10,000 with interest. There is no prospect of selling the property at any price in spite of intensive efforts to do so.
The question to be determined is whether the trustees are obliged to advance further moneys to the corporation and, if so, from what fund or funds such advances shall be made.
The guardian ad litem contends that the trustees should continue to use funds of the trust for this purpose and that it is their legal duty to apply the income for this purpose without regard to the question of whether the property has any value. The cases which he cites have no application to the instant matter. The testator organized this corporation to which he transferred this real estate so that it would *Page 201 
be held by the corporation and not by him individually. Throughout his will and nine codicils, he made it clear that he distinguished between real estate and personal property and between real estate owned by him and real estate which was owned by corporations of which he held the stock. The guardian's argument disregards entirely the corporate entity.
The court will not disregard the corporate entity unless some compelling reason is shown. In Central Hanover Bank, c., v.Braman, 111 N.J. Eq. 191; 161 Atl. Rep. 674, the testator had formed a corporation for the buying and selling of securities. He owned all the capital stock, the executors as directors took over the management of the company, and the stock became a part of the residuary trusts. After the testator's death the corporation sold some of its assets and realized a profit which it declared and paid, as a dividend, to the estate. The guardian ad litem
sought to ignore the corporate entity and to have the dividend regarded as if the corporate assets had been a part of the estate and as if the profit had been realized by the trust. Vice-Chancellor Backes (at p. 192) in refusing to disregard the corporate entity said:
"While we feel that it was the guardian's duty, in safeguarding his wards, to present the question for judicial determination, we do not agree with his conception of the testator's intention. It may well be that had the testator given the assets of the corporation in trust for the beneficiaries of his residuary estate, we might look through the corporate form to carry out the intention, and to reach the conclusion which he urges, that the profits of the post mortem operations of the company were mere increments of the gift of the corpus. It was in such situations that the courts, in the cases he cites, disregarded corporate entity to fulfill testamentary intention. Matter of Bush,209 N Y Supp. 776; Matter of Winburn, N.Y.L.J., April 5th, 1930; inFarmers Loan and Trust Co. v. Pierson, 222 N.Y. Supp. 532, trustees, upon an accounting, were held to a discovery of their directorial management of a corporation solely owned by their testator; corporate entity as a shield against trust responsibility was brushed aside. But in the instant case the testator intended *Page 202 
that his ten thousand shares, viz.: the company its privileges and franchises, and its good will, all of which he must have thought to be of great value, should be of the residue of his estate. A clear manifestation is to be found in the wish, later expressed in the will, that the stock be held unless the executors or the trustees deemed it for the best interest of estate to sell it, or any part, or that the corporation be liquidated, and it is as emphatically implied in the power given to them to use the stock to set up the five trusts eventually to be paid over to the remaindermen. If the life tenants of the trust were severally to have the corporate dividends after the stock was set apart for them, in reason, the division of profits made by the company before segregation belongs to them; and that it was so intended by the testator we think admits of no doubt. We must be guided entirely by the testament, and, if the testator unequivocally expresses his intentions, that is the law of his will. It is not permissible to look into surrounding circumstances to draw an adverse inference or superimpose a different meaning. It is of no interest to us that the testator formed the Alwyn Corporation in 1923 for business conveniences, that in exchange for $4,502,872.79 worth of his property he got all the shares (ten thousand) of the corporation, ran it as a one-man affair, dealt with its assets as his own and made a lot more money. If all this be true we are not in sympathy with the guardian's insistence that it is an allowable deduction of fact that, in death as in life, he regarded the tangible property of the company as his possessions. The testator was a director in three corporations, was familiar with corporate organization and management, and his will furnishes abundant proof of his discrimination and his appreciation that his residuary estate was made up of the capital stock of the Alwyn Corporation and not of its tangible assets. We agree with the guardian that if our view of the testator's intention were in harmony with his, the result he is striving for could be reached without disregarding the corporate entity, and we are in agreement with the opposition that the corporate entity cannot be pierced to arrive at that result. Jackson v. Hooper, 76 N.J. Eq. 592." *Page 203 
The testator in the instant case makes it perfectly clear that he did not intend to give the assets of the corporation to his trustees for he specifically bequeathed stock, his 400 shares, of the corporation. It was a highly speculative, unremunerative investment which he put in a corporation for a definite purpose.
At the time he made the original will his Perth Amboy property was specifically devised by paragraph sixth; later on a corporation was organized by the testator to hold this property and the stock of the corporation was specifically bequeathed by the testator in a codicil. He took pains to distinguish between the property held by corporations and the real estate which he held individually. This is shown by the distinction which he made between the New York real estate held by the corporation and the New York real estate which he owned individually. He was apparently well advised as to the difference between the New York and New Jersey Rules Against Perpetuities and Restraints on Alienation. By the eighth paragraph of his will he created a separate trust "for all the real estate situated within the State of New York, and interests therein, of whatsoever nature and description" of which he should die seized and possessed or to which he should "in any manner or way be entitled" at the time of his death. The terms of this trust were drawn to comply with the New York rule. The trust is limited in its duration to the lives of two of his daughters. The stock of the corporation which held the Staten Island, New York, property was placed in the trust under the sixth paragraph with other property, real and personal, which was not subject to the New York Rule Against Perpetuities and under the provisions of that trust it was to continue, not for two lives in being, but until the death of the last survivor of an indefinite number of persons who might be in being at the time of the testator's death.
Wherever the testator refers to this Staten Island property it is "the real estate held by W.T. Meredith Estate, situate in Staten Island, Richmond County, New York," as in the seventh paragraph of the will, and paragraph IV of the first *Page 204 
codicil, and in the fourth paragraph of the seventh codicil, or "the real property owned and held by the corporations whose capital stocks were given and bequeathed in trust to said trusts under said sixth clause or paragraph," as in paragraph V of the first codicil. Additional evidence if it were needed is given in the fourth paragraph of the seventh codicil by the testator's direction that moneys used for the payment of taxes shall be appropriated "by loaning to said corporations or either of them or otherwise." The ten instruments leave no doubt as to the testator's intention that the trust was one of stock and not of real estate.
No authority has been cited to me which holds that a trustee who holds the stock of a corporation is under any obligation whatsoever to apply the income from the trust to the payment of taxes or other expenses of the corporation. The rule of law for which the guardian argues is one which is based upon the duty of a life tenant to maintain the property in which he holds a life estate. Cadmus v. Combes (Court of Errors and Appeals,1883), 37 N.J. Eq. 264.
It was because there was no duty that the testator went to such lengths to give the trustees not only under the sixth paragraph but under other trusts the power to use funds which might come into their hands for the purpose of advancing them to the corporation. Without such express power the trustees could not invest the trust funds by lending money to a corporation except upon such security as would constitute a legal investment of trust funds. In other respects the trustees' powers are so limited. The testator knew this and relaxed the power for this particular purpose.
The guardian insists that the court does not have the power to give the instruction prayed for to the trustees and that Byrne
v. Byrne, 123 N.J. Eq. 6: 195 Atl. Rep. 848, is so distinguishable that it is not a precedent for doing so. On the contrary, the instant case is stronger than that which the court had before it in the Byrne Case. There the court felt obliged to instruct the trustees not to pay taxes on real estate held in the trust. Here the real estate is not held in the trust. It is held by a corporation. All that the court is asked to do *Page 205 
is to instruct the trustees that they are not obliged to require the corporation to pay the taxes and that they are not obliged to advance trust funds for that purpose. In other words, that they should not so exercise the discretion given them by the testator.
The trustees are instructed to make no further advances to the corporation for the payment of taxes on its property until the further order of the court.
The exceptions filed by the guardian ad litem will be dismissed, and the account of the trustees approved. *Page 206