ALFRED T. MANACHER, Respondent, *v.* CENTRAL COAL Co., INC., et al., Appellants, et al., Defendant.

First Department, June 21, 1954.

*Eli Whitney Debevoise* of counsel (*Abraham Wilson* and *Michael H. Goff* with him on the brief; *Kadel, Wilson & Potts,* attorneys), for appellants.

*Samuel Gottlieb* of counsel (*Harry Giesow* with him on the brief; *Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for respondent.

BASTOW, J. All of the defendants named in this action, except the defendant, Milton D. Manacher, appeal from an order denying their motion to dismiss the amended complaint for failure to state facts sufficient to constitute a cause of action. The original complaint was dismissed upon a similar motion with leave to replead (*Manacher* v. *Central Coal Co.,* 125 N. Y. S. 2d 260). We conclude that the amended pleading must be dismissed for legal insufficiency.

The amended pleading alleges that " long prior to the commencement of this action " three brothers (Irving Manacher, Bernard Manacher and Morris Manacher) agreed to engage in the fuel business in corporate form and by such agreement agreed with each other to carry on a joint enterprise " for the benefit of themselves and the family groups headed by each so as to maintain and preserve in each brother and in each family group a one-third proprietary interest in said joint business enterprise ". It is further alleged that to effectuate this agreement a principal corporation, eleven subsidiary corporations and thirteen affiliate corporations were organized. These twenty-five corporate entities, all defendants herein, " were organized and operated for the aforesaid purpose of carrying on and effectuating said joint business enterprise ".

Pursuant to the agreement, it is alleged, stock in these corporations was issued to and held and owned by the three brothers and their respective family groups in equal thirds.

It is further alleged that since 1933 and following the death of their father, Bernard Manacher, the plaintiff and his brother, Milton D. Manacher, named as a defendant, have constituted one of the groups. In 1937 or 1938, the Morris Manacher group transferred its stockholdings in the various corporations to a personal holding corporation " which said corporation became party to the aforesaid agreement with the same force and effect as though originally party thereto." In March, 1939, the stock of this holding corporation was sold to a so-called " Stephens Group ", consisting of three individuals, who were not members of any family group, and in 1943 the third brother, Irving Manacher, or his family group, purchased the stock from the " Stephens Group " thus acquiring " ownership and control of two-thirds of the corporate stock " of the principal corporation, the affiliate and subsidiary corporations.

The pleading sets forth that pursuant to the agreement and throughout the years the enterprise was carried on for the benefit of the three groups. There follow ten paragraphs reciting examples thereof; such as, equal stock ownership; equal representation on the corporate boards, and among the officers; issuance of equal stock when a new corporation was formed; use by the corporations of one another's funds and use of consolidated financial statements. The complaint contains allegations as to the maintenance of the original agreement and that the comprehensive business as organized and maintained in effect and in fact constituted a joint venture.

The gravamen of the action is found in the paragraphs of the complaint relating to the third brother of the original group — the defendant Irving Manacher. It is alleged that he conspired to procure for himself and his group the controlling interest in the enterprise. Contained in a mass of conclusory allegations we find the principal moving allegations to be that this defendant breached the original agreement by acquiring in 1943 the stock of the holding corporation from the " Stephens Group " without the knowledge and consent of the group represented by plaintiff and his brother, and acquired this interest through the wrongful use of the funds, assets and property of the joint business enterprise.

The prayer for relief seeks a declaratory judgment that an agreement of joint venture was established and maintained;

that the rights of the respective groups be declared; that it be decreed that the defendants comprising the Irving Manacher group have violated their fiduciary duties; that the " culpable " defendants be directed to account and be compelled to restore all funds diverted from said joint enterprise.

There is thus a mixture of separate suggested claims that Irving Manacher breached some personal duty running to plaintiff personally not to acquire any additional interest in the enterprise without giving plaintiff an equal opportunity to participate, and misappropriated property of the enterprise. Aside from the improper joinder of personal and corporate causes of action, there is no factually sufficient allegation of either. Indeed, there is no attempt to state a derivative stockholders' action. That is eschewed and instead an attempt is made to avoid the corporate set-up by treating it as a joint venture. Of the unavailability of this theory to plaintiff more will be said later.

Of any claim that defendant Irving Manacher breached any duty owing to plaintiff by acquiring the interest of the Stephens group without affording plaintiff an opportunity to participate, it is sufficient to say that any allegation of an agreement upon which such a claim could be bottomed is carefully avoided in the verbiage of the complaint. The pleading in most general terms alleges the making of an agreement by three brothers more than twenty years ago so as to maintain in each and his family like interests. Two of the brothers have since died. One was the father of plaintiff, who makes himself a party to the agreement by the conclusory allegation that he succeeded to the interest of his father and duly became and was accepted and subsequently was a party to the agreement. The interest of the second brother, now deceased, was transferred in 1937 or 1938 to a holding corporation which is vouched into the original agreement by a similar conclusory allegation that it " became party to the aforesaid agreement with the same force and effect as though originally party thereto ". Thereafter three individuals, who in the absence of allegation to the contrary may be assumed not to be members of the Manacher family, purchased the stock of the holding company. They are not named as defendants but the original contract is given continued life and vitality by the same allegation that they " duly became a party to said agreement with the same force and effect as though originally named therein ". The claimed relief is based in part upon the act of the defendant, Irving

Manacher, in that he " surreptitiously purchased and acquired the corporate stock " of the holding company owned by the " Stephens Group ". The very relief requested of a declaratory judgment shows in the circumstances that plaintiff is trying by extraordinary efforts to have declared some legal relationship not defined by agreement. The amended complaint fails in the same respects as the original complaint and is equally subject to the ruling of insufficiency previously made.

It seems to us, however, that the complaint must be dismissed for legal insufficiency more fundamental than an inadequately alleged agreement. As we construe the complaint plaintiff, as a stockholder in the several defendant corporations, is seeking equitable relief in the guise of a joint venturer and this he may not do.

We recognize the general rule, upon which respondent apparently relies, that a corporation may under a joint venture with others transact any business which is within the scope of its legitimate powers (48 C. J. S., Joint Adventures, § 3, subd. b). Such was the scope of our holding in *Red Robin Stores* v. *Rose* (274 App. Div. 462). Therein it appeared the plaintiff, a New York corporation, was engaged in the purchase and sale of ladies' wearing apparel through a chain of its stores. It made contracts with the defendant which created a joint venture limited to the operation of ladies' ready-to-wear retail departments in plaintiff's stores. Subsequently, disputes arose between the parties and the action was brought for judgment declaring the agreements illegal and void. In dismissing the complaint we said (p. 465) that " There is nothing inherently illegal in a corporation entering into a joint venture, when such venture does not deviate from the business for which it was organized."

In the pleading before us the several corporations were organized, it is alleged, " for the aforesaid purpose of carrying on and effectuating said joint business enterprise ". It thus appears that the plaintiff in his individual capacity is suing to invoke the aid of a court of equity in securing to him from the several corporations and their stockholders the rights and remedies to which he would be entitled under a joint venture agreement on the ground that the individuals are engaged in carrying on a joint enterprise through corporate forms.

One of the earlier decisions upon this subject, which has been frequently cited by the courts of this State, is *Jackson* v. *Hooper* (76 N. J. Eq. 592). It appeared therein that the parties to the action conducted a business in the names of corporations in

accordance with an agreement as to equal ownership, interest, authority and control. The existence of the corporations was disregarded " ' except as agencies and instrumentalities created by them for carrying out certain of their co-partnership purposes.' " (P. 595.) A disagreement having arisen between them, an action was brought to have the corporate property administered as upon a dissolution of a copartnership. The court held that the parties were not partners but stockholders in the corporations. It was said (p. 598) that " An agreement or course of dealing by which corporations are organized for the purpose of using them merely as agencies or instrumentalities, or forms in the conduct of a copartnership or joint business, and by the consent of the parties in interest to be independent of statutory control, cannot be recognized, enforced or perpetuated by the court of chancery in this state ".

This rule has been consistently followed in this State. Thus, in *Boag* v. *Thompson* (208 App. Div. 132, 135) it was said " that the plaintiff is a stockholder in these different corporations, and his own declaration is to the effect that while there never was a copartnership, there existed what he terms a ' joint venture.' Even if this be so, the same rules of law apply to joint ventures as to partnerships. His only remedy, so far as I can see, is under the corporation laws of this State in an action by the corporation itself, or in a stockholder's action. He cannot be a stockholder and seek relief as a copartner or as a joint venturer, for surely he is either one or the other ". (See, also, *Eckerman* v. *Goldberg,* 281 App. Div. 899; *Berger* v. *Eichler,* 211 App. Div. 479, and *Cuppy* v. *Ward,* 187 App. Div. 625.)

It is true that there are many decisions which upon a casual reading appear to be in conflict with this rule of law. These cases in one form or another enunciate the rule that a court of equity will intervene and grant relief where the agreement is extrinsic to the corporate entity. Relief is afforded the plaintiff not in his capacity as a stockholder but based upon an agreement derived from outside of the separate fictional existence of the corporation. Simply stated, the agreement or other factual situation upon which relief is granted runs alongside of the path of the corporation. When the two merge, however, and relief is sought upon the ground that the corporation has become a mere agency or instrumentality for the performance of an independent agreement of joint adventurers or partners the aggrieved party is relegated to his rights as a stockholder and may not sue in his individual capacity.

Isolated statements to the contrary may be extracted from opinions but upon study of the factual background they do not blur the line of demarcation. An examination of the authorities cited by respondent discloses that they represent actions brought upon agreements extrinsic to the entity of the corporation. Thus, in *Pierce* v. *Pierce* (253 App. Div. 445, affd. 280 N. Y. 562), a suit was brought to establish the relationship of the plaintiff and the individual defendant, as engaged in transactions in the nature of joint ventures. The judgment declared the principal transactions fraudulent and void, and directed the defendant to retransfer certain stocks and property found to belong to the plaintiff.

Similarly, *Marston* v. *Gould* (69 N. Y. 220); *Silverman* v. *Bob* (253 App. Div. 303); *Brady* v. *Erlanger* (165 App. Div. 29), and *Spier* v. *Hyde* (92 App. Div. 467), all relied upon by respondent, were actions brought by one individual against another arising out of a joint venture or other agreement between the two. The organization of a corporation or its existence was extrinsic to the agreement sued upon. The distinction is pointed up in *Brady* v. *Erlanger* (*supra,* p. 31), where the judgment below dismissing the complaint proceeded upon the theory that by mutual consent of the parties, the whole enterprise was turned over to the corporation thus formed, and that whatever right plaintiff had to a participation in the profits of the enterprise was through the corporation. In reversing and directing an accounting, it was said that " The true state of affairs as the evidence shows was that defendant organized the theatre corporation to take over his interest in the joint enterprise * * *. As between the original parties, it is quite clear that plaintiff and defendant remained cojoint adventurers to the end, the corporation acting as *alter ego* for defendant."

Respondent places great weight upon our decision in *Levy* v. *Charles-Isidore Holding Corp.* (255 App. Div. 389) and describes it as a case " precisely similar " to the instant case. There the plaintiffs sued as heirs to have stock delivered to them under their decedent's agreement with defendants, who had refused to deliver the stock or to account. We found that there was an underlying agreement of joint venture and that the plaintiffs were entitled to have the coadventurers account. All of the transactions were extrinsic to the corporation. In other words, no claim was made that the corporation was an instrumentality used to carry on the joint venture.

The conclusion we reach appears to be founded upon sound principles of law and public policy. Individuals may enter into partnership agreements or joint ventures independent of the corporate form but they may not organize a corporation for the purpose of carrying on a joint venture. Thereby they would become joint venturers *inter sese* and a corporation to the rest of the world with the privilege of changing from coadventurer to stockholder as the situation might require.

The order appealed from should be reversed, with costs and the complaint dismissed.

DORE, J. (dissenting). The amended complaint, in my opinion, corrects the fatal defect pointed out by Justice CORCORAN with regard to the prior complaint; namely, the failure factually to allege a joint venture between the three brothers for the benefit of themselves and their respective family groups including an agreement to maintain and preserve in each brother and in each group a one-third proprietary interest. It also alleges the breach of the agreement and sues for a declaratory judgment as to the rights and relationship of the parties.

The complaint is most unusual in the number of corporations alleged to have been organized pursuant to the original claimed joint venture; but essentially the same issue would be presented if only one corporation was alleged to have been organized to implement the joint venture. I think it is going too far to say as a matter of law that joint venturers may not organize a corporation to implement their joint venture. The respective joint ventures or their respective successors remain *inter sese* joint venturers though, after the corporation has been organized, it is to the rest of the world a corporation, but the joint venturers have not the privilege of changing at their whim from joint venturers to stockholders and vice versa. The present complaint specifically alleges the joint venture agreement and the acts and transactions carried on pursuant thereto or in violation thereof; and is, in my opinion, sufficient to withstand a motion to dismiss for insufficiency under rule 106.

Accordingly, I dissent and vote to affirm.

PECK, P. J., CALLAHAN and BREITEL, JJ., concur with BASTOW, J.; DORE, J., dissents and votes to affirm in opinion.

Order reversed, with $20 costs and disbursements to the appellant and the complaint dismissed, and judgment is directed to be entered in favor of the appellants dismissing the complaint herein, with costs.