**Isaac ARDITI, Plaintiff-Appellant,**

v.

**Aaron DUBITZKY, Defendant-Appellee.**

**No. 11, Docket 29575.**

United States Court of Appeals
Second Circuit.

Argued Oct. 22, 1965.

Decided Dec. 29, 1965.

John J. Langenbach, Hartford, Conn. (William R. Moller, Hartford, Conn., with him on the brief), for appellant.

Sidney M. Wittner, New York City, (Bromberg & Appleton, Hartford, Conn., with him on the brief), for appellee.

Before WATERMAN and MOORE, Circuit Judges, and TYLER, District Judge.

MOORE, Circuit Judge:

The plaintiff Isaac Arditi appeals from an order granting summary judgment in favor of the defendant Aaron Dubitzky and dismissing the complaint for failure to state a claim upon which relief may be granted.

The complaint alleges a joint venture agreement between Arditi and Dubitzky and seeks an accounting and damages for breach of the agreement. Jurisdiction is based upon diversity of citizenship. From the complaint it appears that plaintiff, a resident of New York, was a skilled commodity dealer and that defendant, a resident of Connecticut, was a builder and land developer; that defendant in May 1958 had made an offer to the Redevelopment Agency of the city of New Brunswick, New Jersey, to acquire and develop a site in that city with a high-rise apartment project; that the defendant interested plaintiff in joining with defendant in the development project—plaintiff to work on the financing of the venture, defendant to work on the building and engineering end; that pursuant to the joint venture, defendant on August 14, 1958, submitted a proposal for acquisition and development of the site to the New Brunswick authorities in the name of "Parkway Constructors, Inc."; that their bid was accepted; that in furtherance of the joint venture, a New Jersey corporation named New Parkway Constructors, Inc., was formed, with Arditi, Dubitzky, a lawyer named Pollack, and two architects named Gardner and Turano as incorporators; that the last three "were to offer their professional services in consideration for a prorational share of the profits"; that the first organizational meeting of the company was held in February 1959; and that in July 1959 the lawyer and the architects sold their stock interests to Arditi and Dubitzky, so that the latter became (and still are) 50-50 owners of the business.

To this sketchy outline must be added the charges of false representations and broken promises which are fundamental to plaintiff's claim. Long prior to the formation of any corporation, plaintiff alleges that a joint venture agreement was made with defendant whereunder defendant would supervise all construction, would work with plaintiff to obtain suitable financing, and would devote all his time to the project. Defendant is said to have represented himself as skilled and experienced in such ventures. These representations are alleged to have been knowingly false when made. The complaint then lists in detail defendant's many derelictions. For purposes of this appeal it is sufficient to note charges that Dubitzky misrepresented to the plaintiff the size and nature of the financial commitments necessary to the success of the venture; failed to spend as much time supervising the project as he said he would; negligently permitted the alteration of plans for the building, with various dire and costly results; negligently approved plans for solar screens which later turned out to be structurally unsound and had to be replaced; and obstructed work on the site by quarreling with the contractor.

Upon Dubitzky's motion for summary judgment, the District Court ordered the complaint dismissed on the grounds that under both the law of New York—where the alleged joint venture agreement was made—and of New Jersey—the place of performance—any obligations which a joint venture may have created are

merged into a corporation created to carry on the joint venture.

■ The District Court in Connecticut properly looked to Connecticut's rules on choice of law to determine what law was applicable to the case. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Connecticut law, the validity and construction of a contract are determined by the law of the place where the contract was made, unless the place of performance is in some other jurisdiction, in which case the law of the place of performance governs both the validity and the effect of the contract. Jenkins v. Indemnity Ins. Co. of North America, 152 Conn. 249, 205 A.2d 780 (1964); Illustrated Postal Card & Novelty Co. v. Holt, 85 Conn. 140, 81 A. 1061 (1912); Chillingworth v. Eastern Tinware Co., 66 Conn. 306, 33 A. 1009 (1895). Here the agreement was entered into in New York, but the principal place of performance may well have been New Jersey, although the complaint alleges that New Parkway Constructors, Inc., kept offices in New York for the receipt of bids. Since we agree with the district court that the laws of New York and New Jersey are sufficiently similar on the determinative point, we may look to the decisions of both states for guidance.

The district court based its decision entirely upon the assumption that it was the law of both New York and New Jersey that whatever rights the parties may have had under their joint venture agreement, "the rights under it were merged into the corporations at the time they were organized" and hence no longer existed. Reliance for this principle is placed primarily upon Jackson v. Hooper, 76 N.J.Eq. 592, 75 A. 568, 27 L.R.A., N.S., 658 (Ct.Err. & App.1910) for New Jersey and Weisman v. Awnair Corp. of America, 3 N.Y.2d 444, 165 N.Y.S.2d 745, 144 N.E.2d 415 (1957) for New York.

In Jackson v. Hooper, supra, the parties had formed two corporations with the understanding that they would exercise equal control over the management of the corporate business, the corpora-

tions being mere agencies for the partnership of the parties. Jackson alleged that Hooper violated this agreement by ousting him from the conduct of the business with the assistance of the "dummy" directors. The Court of Errors and Appeals held for Hooper, on the grounds that if partners

adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners, and have only the rights, duties, and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world.

76 N.J.Eq. at 599, 75 A. at 571. In Leviton v. North Jersey Holding Co., 106 N.J.Eq. 517, 151 A. 389 (Ct.Ch.1930), the court relied on Jackson v. Hooper in holding that an agreement to incorporate for the purpose of a joint venture and to wind up the company when the venture is accomplished is against the policy of the corporation statute. However, the much more recent case of Fortugno v. Hudson Manure Co., 51 N.J.Super. 482, 144 A.2d 207 (App.Div.1958), seems to mark a move away from Jackson v. Hooper. There, eight partners ran a family partnership. Over the years various aspects of the business were incorporated. The court held that in deciding how to dissolve the partnership, the corporations should be regarded as assets of the partnership and divided equally among the partners rather than divided according to stock ownership in each company.

In New York, early cases had applied the rule of Jackson v. Hooper without question. E. g., Manacher v. Central Coal Co., 284 App.Div. 380, 131 N.Y.S.2d 671 (1st Dep't 1954), aff'd mem., 308 N.Y. 784, 125 N.E.2d 431 (1955) (dismissing a complaint alleging that defendants had breached a joint venture agreement under which defendants and plaintiff were to share equally in a joint enterprise conducted through various corporations). In the most recent full discussion of the question by the Court of Appeals, in Weisman v. Awnair Corp. of America,

supra, the court repeated the rationale of Jackson v. Hooper in broad terms. The complaint in Weisman alleged that the defendants had agreed with Weisman to form a new company of which Weisman was to have a certain portion of the stock. This company was to be the exclusive distributor of Awnair's products in the New York City area. After a few years, in breach of the alleged agreement, Awnair named another company as distributor. The Court of Appeals upheld the dismissal of the complaint on the grounds that the complaint really alleged an agreement

> to conduct a business enterprise as joint venturers through the instrumentality of a corporation presenting itself to the world as the responsible entity. This they may not do for the rule is well settled that a joint venture may not be carried on by individuals *through* a corporate form. [citing cases] The two forms of business are mutually exclusive, each governed by a separate body of law. [The Court then quoted the language of Jackson v. Hooper quoted above] * * *

> This is not to say * * * that individuals agreeing to go into business together jointly cannot decide to conduct the business through a corporation. What we do declare is that when individuals do determine to conduct business through a corporation, as is here alleged, they are not at one and the same time joint venturers and stockholders, fiduciaries and nonfiduciaries, personally liable and not personally liable. 3 N.Y.2d at 449, 165 N.Y.S.2d at 749, 144 N.E.2d at 418.

However, the case of Macklem v. Marine Park Homes, Inc., 17 Misc.2d 439, 191 N.Y.S.2d 374 (1955), aff'd mem., 8 A.D.2d 824, 191 N.Y.S.2d 545 (1959), aff'd without opinion, 8 N.Y.2d 1076, 207 N.Y.S.2d 451, 170 N.E.2d 455 (1960), appears to have limited the scope of Weisman. In Macklem, plaintiff's assignor had a contract to purchase real property, but lacked the necessary funds. The two individual defendants arranged for financing and formed a corporation to which plaintiff's assignor assigned the contract. The corporation took title to the land, which was then resold at a profit. The trial court held that plaintiff's assignor had no rights as a shareholder of the corporation, but could have recovered on a theory of joint venture, since the company was intended merely as a conduit of title. Later cases decided by New York's intermediate and lower courts have to some extent reflected the Macklem modification of Weisman. Fromkin v. Merrall Realty, Inc., 15 A.D. 2d 919, 225 N.Y.S.2d 632 (1962) upheld the dismissal of a complaint alleging breach of a joint venture on the grounds that "the individual parties, having agreed to conduct the enterprise through the instrumentality of a corporation * * *, a theory premised on a joint venture may not be pursued." Macklem was distinguished on the grounds that there the corporation was "merely * * an adjunct of a joint venture." See also M. P. E. Holding Corp. v. Freeman's Dairy, Inc., 36 Misc.2d 594, 232 N.Y.S.2d 639 (Sup.Ct.1962); Loverdos v. Vomvouras, 23 Misc.2d 464, 200 N.Y.S.2d 921 (Sup.Ct.1960).

The rule of Jackson v. Hooper has come under heavy attack and has been rejected by many jurisdictions. See Conway, The New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures, 30 Fordham L.Rev. 297 (1961); Note, Joint Venture Corporations: Drafting the Corporate Papers, 78 Harv.L.Rev. 393, 397–98 (1964); Note, Corporations: Does a Joint Adventure Agreement to Use the Corporation as a Medium Survive Incorporation?, 44 Calif.L.Rev. 590 (1956). There is little logical reason why individuals cannot be "partners *inter sese* and a corporation as to the rest of the world," so long as the rights of third parties such as creditors are not involved. See, e. g., De Boy v. Harris, 207 Md. 212, 113 A.2d 903 (1955); Delaney, The Corporate Director; Can His Hands Be Tied in Advance, 50 Colum.L.Rev. 52 (1950). The courts of New York and New Jersey

have come to recognize this trend, at least to the extent of permitting suit upon joint venture obligations if it is apparent that the intention of the parties was that the corporation should be only a means of carrying out the joint venture—a conduit of title, as in Macklem, or a way of organizing different branches of a wide-reaching joint enterprise, as in Fortugno.

■ The plaintiff is entitled to attempt to show at trial that the intention of the parties to the present suit was, as he indicates in his complaint, to set up a corporation only as a means of carrying out their joint venture. The complaint alleges that Dubitzky and Arditi entered into an agreement under which Arditi was to help with the financing and Dubitzky was to undertake "all of the construction and management details." See paragraphs 5 and 7 of the complaint. If Arditi can show that such an agreement was entered into, and that Arditi and Dubitzky intended the corporation to be merely an instrumentality of the joint venture, the requirements of Fortugno and Macklem would appear to have been met. Nor is there any allegation tending to show that the parties intended their personal joint venture agreement to be merged into and carried on by a corporation.

■ Apart from stating a cause of action for breach of joint venture obligations, the complaint may state a cause of action which, if it must be labelled, is for misrepresentation rather than for breach of joint venture obligations. Paragraphs 7, 8 and 17 of the complaint, read together, allege that Dubitzky induced Arditi to come into the venture by knowing misrepresentations as to the amount of financing necessary to the success of the venture; as to information possessed by Dubitzky which led him to believe that the faculty of Rutgers would occupy most of the apartments; and as to Dubitzky's skills and his willingness to work hard on the project. These allegations on their face state an action for misrepresentation of present fact and of present intention. The complaint goes on to set forth the financial harm to the plaintiff alleged to have been brought about by the defendant's misrepresentations. None of the cases cited have suggested that incorporation should end liability for previous misrepresentations between the incorporators.

■ Although the complaint is scarcely a model of clarity as to legal theory, pre-trial procedures should serve to effect a statement of the triable issues. We express no opinion as to the merits. We limit our decision merely to holding that upon the facts as pleaded it was premature to say by way of summary judgment that the joint venture agreement as alleged was merged into the corporation and extinguished. Plaintiff and defendant alike should have an opportunity to present such facts as they may be able to adduce.

The defendant maintains as a separate ground for supporting the trial court's summary judgment that the joint venture is unenforceable under the Statute of Frauds since "by its terms" it "is not to be performed within one year from the making thereof." New York Personal Property Law § 31. This issue was not considered by the trial judge, and is not as simple as the defendant would have us believe. The problems posed by the Statute are several: does the New York or the New Jersey statute apply? Could the contract conceivably have been performed within one year? Does the correspondence betwen the parties indicate a memorandum sufficient to take the case out of the statute? If the joint venture agreement is unenforceable because of the statute, is proof of the agreement essential to maintain the allegations of misrepresentation? See Channel Master Corp. v. Aluminum Sales, Inc., 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958). We are not able to answer any of these questions on the facts before us, and leave the resolution of these problems to the trial court on remand.

Reversed and remanded.